**INTERNATIONAL DESIGN CONCEPTS, LLC,**
Plaintiff,

v.

**SAKS INCORPORATED and Saks Fifth Avenue, Inc.,**
Defendants.

**No. 05 Civ. 4754(PKC).**

United States District Court, S.D. New York.

March 27, 2007.

Donald L. Kreindler, Phillips Nizer LLP, Jeremy David Richardson, New York City, for Plaintiff.

Michael Robert Gordon, Brian David Koosed, Kirkpatrick & Lockhart Preston Gates Ellis, LLP, New York City, for Defendants.

Richard G. Tashjian, Bradley M. Rank, Tashjian & Padian, New York City for Intervenor Plaintiff.

### MEMORANDUM AND ORDER

CASTEL, District Judge.

Under a licensing agreement between Apparel Group International ("AGI") and Oscar de la Renta, Ltd. ("Oscar"), AGI was permitted to sell products bearing the Oscar trademark to defendants Saks Incorporated and Saks Fifth Avenue, Inc. (collectively, "Saks"). Saks is alleged to have improperly imposed various chargebacks and improperly taken vendor markdown allowances causing damage to AGI. AGI defaulted on the royalty provisions of its licensing agreements with Oscar and Oscar cancelled AGI's license. AGI subsequently closed its business and, on May 18, 2004, transferred "all assets of the undersigned ...." to HSBC Bank, ("HSBC"), in repayment for a $754,023.77 debt. That same day, plaintiff International Design Concepts, L.L.C. ("IDC"), allegedly acquired from HSBC all assets of AGI in exchange for payment of $751,896.14 to HSBC.

IDC now brings suit against Saks, alleging that the defendants breached their contract with AGI by improperly assessing the various chargebacks and taking illegitimate vendor markdown allowances on goods defendants purchased from AGI. The Second Amended Complaint, ("SAC"), filed by IDC in June 2005, also asserts eight other claims under New York law: common law fraud, tortious interference with prospective business advantage, violation of General Business Law ("G.B.L.") § 349, three claims under sections 2–709(1)(a) and (1)(b) and 2–718 of the New York Uniform Commercial Code ("N.Y.U.C.C."), unjust enrichment and quantum meruit. Plaintiff now seeks leave to withdraw the third count, the claim for tortious interference, and the sixth count to the extent that it relies on N.Y.U.C.C. 2–709(1)(b). The third claim and the referenced portion of the sixth claim are deemed withdrawn.

Discovery was set to close on February 28, 2007. In March 2006, defendants moved to dismiss all claims in the SAC,

pursuant to Rule 19(a), Fed.R.Civ.P., on the ground that plaintiff failed to join Oscar, an entity defendants view as indispensable and non-diverse. Defendants also moved for judgment on the pleadings under Rule 12(c) or, alternatively, summary judgment under Rule 56, Fed. R.Civ.P. Defendants contend that all tort claims against it should be dismissed because those claims were not validly assigned from AGI to IDC. Defendants also assert that the fraud and G.B.L. § 349 claims fail to state a valid claim for relief. They contend that the N.Y.U.C.C. claims, the fifth, sixth and seventh counts of the SAC, are time-barred. They also assert that plaintiff may not properly pursue a claim based on unjust enrichment or quantum meruit while simultaneously pursuing a claim of breach of contract.

On January 1, 2006, non-party Oscar moved to intervene as a party-plaintiff, pursuant to Rule 24(a) and, alternatively, Rule 24(b), Fed.R.Civ.P. (Docket 73) Oscar is a New York corporation. IDC, an LLC, has two members, both natural persons who are citizens of New York. Defendants are corporations organized under the laws of Tennessee and Massachusetts and have their principal places of business in Alabama. Because Oscar has sought to intervene as a plaintiff, this court's jurisdiction, premised upon diversity of citizenship, would remain intact if the motion is granted.

I will first address Oscar's motion to intervene. I will then consider defendants' motion.

For the reasons explained below, Oscar's motion to intervene is granted. Further, defendants' motion for judgment on the pleadings as to the fourth count is granted. All other relief sought by defendants is denied.

## I. *Oscar's Motion to Intervene*

■ Non-party Oscar moves to intervene in this action as of right under Rule 24(a) or permissively under Rule 24(b). Plaintiff IDC has opposed Oscar's Rule 24(a) motion for intervention as of right, asserting that Oscar is not a necessary party under Rule 19, Fed.R.Civ.P., that Oscar's motion is untimely and that entry of Oscar into this action will prejudice IDC and compel the court to reopen fact discovery. Further, IDC asserts that permissive intervention under Rule 24(b) is inappropriate as Oscar's motion is untimely and there are no common questions of fact and law. Defendants do not oppose Oscar's motion to intervene.

■ Under Rule 24(a), intervention as of right is mandated when all of the following conditions are met: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994). "If a party is not 'necessary' under Rule 19(a), then it cannot satisfy the test for intervention as of right under Rule 24(a)(2)." *MasterCard Int'l. Inc. v. Visa Int'l Service. Ass'n Inc.*, 471 F.3d 377, 389–90 (2d Cir.2006).

I conclude that even if Oscar were not a necessary party under Rule 19, permissive intervention is appropriate under Rule 24(b). Accordingly, I need not determine whether intervention as of right under Rule 24(a) is warranted. *See Gulf Underwriters Ins. Co. v. The Hurd Ins. Agency*, 2004 WL 2935794, *2 n. 3 (D.Conn. Dec. 16, 2004)(concluding that permissive intervention is appropriate and that the "more

difficult question" of intervention under Rule 24(a) need not be reached); *State of New York v. Reilly*, 143 F.R.D. 487, 489 (N.D.N.Y.1992) ("Having granted the [intervenors] motions for permissive intervention, there is no need for the court to decide whether or not these applicants are entitled to intervention of right pursuant to Rule 24(a)(2).").

■ Permissive intervention under Rule 24(b) is discretionary. *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir.2003). In considering whether permissive intervention is warranted, I have considered a range of factors, including "the nature and extent of the intervenors' interests," and to what, if any, degree those interests are "adequately represented by other parties," as well as "whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986). While there are some overlapping interests between Oscar and plaintiff, Oscar has an interest sufficiently distinct as licensor that its interests are not adequately represented by IDC alone.

I have also considered the timeliness of Oscar's motion, including the "(a) the length of time [Oscar] knew or should have known of [its] interest before making the motion; (b) prejudice to existing parties resulting from [Oscar's] delay; (c) prejudice to [Oscar] if the motion is denied; and (d) [the] presence of unusual circumstances militating for or against a finding of timeliness." *United States v. New York*, 820 F.2d 554, 557 (2d Cir.1987). While I acknowledge that considerable time has elapsed prior to the filing of the motion by Oscar, no significant prejudice to the existing parties ought to result. I

anticipate that any reopening of discovery will be relatively brief. I am convinced that through attentive case management, any prejudice can be minimized.

Oscar's entrance will contribute to the full development of factual issues as well as efficient adjudication of all parties' interests. As noted, defendants have no objection to the permissive joinder. For the aforementioned reasons, I conclude that permissive intervention under Rule 24(b) is appropriate and Oscar's motion is granted. Having concluded that Oscar may intervene, I need not consider defendants' motion to dismiss under Rule 19, Fed. R. Civ. P., which argues that there has been a failure to join an indispensable party, Oscar. (1/25/07 Letter of Defendants' Counsel)

## II. *Saks's Motion for Judgment on the Pleadings under Rule 12(c)*

Defendants assert that the second and fourth counts, asserting claims of common law fraud and violation of G.B.L. § 349, should be dismissed as they are tort claims which were not properly assigned to IDC, and therefore IDC has no standing to assert them. Alternatively, Saks contends that the second and fourth counts fail to state a claim.

### 1. *Standard on a Rule 12(c) Motion*

In considering Saks's motion for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P., I have employed the same legal standard as applicable under a motion to dismiss. *See Desiano v. Warner–Lambert & Co.*, 467 F.3d 85, 89 (2d Cir. 2005). As with a Rule 12(b)(6) motion, Rule 12(c) motions are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings. Rule 12(c), Fed. R.Civ.P. However, as with a Rule 12(b)(6)

236

motion, the court may, without converting the motion into a motion for summary judgment, consider documents relied on or incorporated by reference in the complaint. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir.2002)(internal quotations and citations omitted); *see also Levy v. Southbrook. Int'l Investments, Ltd.*, 263 F.3d 10, 13 n. 3 (2d Cir.2001).

### 2. *The Tort Claims Were Properly Assigned to IDC*

"An assignment is a transfer or setting over of property, or of some right or interest therein, from one person to another, and, unless in some way qualified, it is properly the transfer of one whole interest in an estate or chattel or other thing." *Griffey v. New York Century Ins. Co.*, 100 N.Y. 417, 3 N.E. 309 (1885). With limited exceptions not applicable here, New York permits the assignment of tort claims. *See, e.g., Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 151–52 (2d Cir. 1995). Under New York law, an assignment of all contractual rights does not necessarily include an assignment of all tort claims; rather, whether tort claims are encompassed within the assignment is a matter of contract interpretation. *See Royal Mortgage Corp. v. F.D.I.C.*, 20 F.Supp.2d 664, 668 (S.D.N.Y.1998). No specific language is required in order to transfer a tort cause of action. "Any act or words are sufficient which show an intention of transferring the chose in action

to the assignee...." *See Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548 (2d Cir.1976) (internal citations and quotations omitted).

The words of the assignment are of paramount importance. In *Fox v. Hirschfeld*, the Appellate Division considered whether tort claims were encompassed within an assignment clause which read "I hereby sell, assign, transfer, and set over ... all my right, title, and interest in and to the within contract...." The court construed the language as indicating an intent to transfer only those claims which were contractual in nature and not those tort claims that arose outside of the contract. 157 A.D. 364, 368, 142 N.Y.S. 261 (1st Dept. 1913)("[T]he language employed in the assignment of the contract was not appropriate to assign a cause of action arising, not under the contract, but for the fraudulent representations of the defendant de hors the contract."). In contrast, the two-part assignment clause construed in *Banque Arabe*, 57 F.3d at 152, was held to have transferred not just the assignor's interest in the agreement at issue but all related tort claims. There, the court read the term "transaction" in the phrase "all of [BAII's] rights and interest in the *transaction* described in Paragraphs (a) and (b)" to encompass tort claims. *Id.* The court noted that the assignor was to be dissolved and that "[a] party about to become defunct has little incentive to reserve transactional rights." *Id.* at 153. Finally, the *Banque Arabe* court noted that a finding that the fraud claim was validly assigned "is also consistent with the general trend in New York toward adopting principles of free assignability of claims, including those of fraud." *Id.* (citing N.Y. Gen. Oblig. Law §§ 13–105 & 13–107 (McKinney 1978); *ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse*, 609 F.Supp. 434, 441–42 (S.D.N.Y.1984)).

■ The language of the assignment clauses at issue and the surrounding circumstances favor the conclusion that the tort causes of action were transferred from AGI to HSBC and then from HSBC to IDC. The language of the assignment from AGI to HSBC reads, in relevant part, as follows:

"[A]ll assets of [AGI], including, *without limitation,* the undersigned's now and hereinafter existing Accounts Receivable, Contract Rights, Inventory, Machinery and Equipment, General Intangibles, including Borrower's trademarks and trade names and all products and proceeds thereof (as defined in the Load Documents and collectively the "Collateral"). Because of the inability of [AGI] to pay the Obligations which are currently due and owing, the undersigned hereby grants you *all rights of possession in and to* the Collateral...."

(emphasis added) (Gordon Aff. Exh. 12, ¶ 1) The assignment of "all assets of [AGI]" is broad enough to encompass all causes of action owned by AGI. The transfer from HSBC to IDC is similarly broad. It provides that HSBC "hereby sells, grants, assigns, transfers, conveys and sets over to [IDC] *all* of [HSBC's] right, title and interest in and to all of the Collateral conveyed by the May 18, 2004 peaceful possession letter." (Gordon Aff. Exh. 13, ¶ 1)(emphasis added). The words of both clauses are comprehensive and indicate that the parties intended that all assets be transferred. I also note that AGI was a defunct entity and would have had little incentive to reserve transactional rights. *See Banque Arabe,* 57 F.3d at 152–53.

3. *Count Two Alleging Fraud Is Not Redundant of Count One Alleging Breach of Contract*

■ Under New York law, a claim for fraud cause must be distinct from a claim for breach of contract. *See River*

*Glen Assocs., Ltd. v. Merrill Lynch Credit Corp.,* 295 A.D.2d 274, 275, 743 N.Y.S.2d 870 (1st Dept.2002). Where a fraud claim "seeks to enforce no more then [sic] the breached promises and obligations of a contract, rather than additional damages incurred as a result of the breach, the claims are merely redundant and must be dismissed." *R.H. Damon & Co., Inc. v. Softkey Software Products, Inc.,* 811 F.Supp. 986, 992 (S.D.N.Y.1993) (citing *Tesoro Petroleum Corporation v. Holborn Oil Company Ltd.,* 108 A.D.2d 607, 607, 484 N.Y.S.2d 834 (1st Dept.1985), *appeal dismissed,* 65 N.Y.2d 637 (1985).). While the misrepresentation of an intention to perform under the contract is insufficient to allege fraud, a misrepresentation of a material fact which is collateral to the contract and serves as an inducement for the contract is sufficient to allege an independent claim of fraud. *Mendelovitz v. Cohen,* 830 N.Y.S.2d 577 (2d Dept.2007)(citing *Ross v. DeLorenzo,* 28 A.D.3d 631, 636, 813 N.Y.S.2d 756 (2d Dept.2006)); *see Krantz v. Chateau Stores of Canada Ltd.,* 256 A.D.2d 186, 187, 683 N.Y.S.2d 24 (1st Dept.1998). In cases where a plaintiff alleges both a breach of contract and fraud, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract: or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 20 (2d Cir.1996) (citations omitted); *see McKernin v. Fanny Farmer Candy Shops, Inc.,* 176 A.D.2d 233, 574 N.Y.S.2d 58, 59 (2d Dept.1991).

■ Here, the second count of the SAC alleges that defendants "knowingly issued false, improper and excessive charge backs to AGI" and that "AGI relied

upon the Saks Defendants' false representations that all of the chargebacks issued to AGI were valid and proper chargebacks." (SAC ¶¶ 69–70) IDC further alleges that it was injured thereby.

In paragraph 15 of the SAC, plaintiff alleges that "[t]he Saks Defendants ordered garments from AGI's Licensed Products collection by issuing purchase orders to AGI which specified, in part, style, quantity and price." Construing this allegation in a light most favorable to the plaintiff, the non-movant, it is broad enough to allege a series of contracts between AGI and defendants, rather than a single overarching agreement. At the pleading stage, I cannot tell whether, consistent with the SAC, plaintiff will be able to prove that a knowingly false statement in connection with one purchase order constitutes a fraud with respect to a subsequent purchase order. It may be possible that a false statement with respect to one purchase order was "collateral or extraneous" to a subsequent purchase order or induced IDC to enter into subsequent purchase orders, thereby potentially supporting a fraud claim. *See, e.g., WIT Holding Corp. v. Klein,* 282 A.D.2d 527, 528–29, 724 N.Y.S.2d 66 (2d Dept.2001); *First Bank of Ams. v. Motor Car Funding, Inc.,* 257 A.D.2d 287, 291–92, 690 N.Y.S.2d 17 (1st Dept.1999). Accordingly, the motion to dismiss the fraud claim, the second count, is denied.

While "punitive damages are not recoverable for an ordinary breach of contract", it is elemental that a claim for fraud or fraudulent inducement may serve as a foundation for an award of punitive damages. *Rocanova v. Equitable Life Assurance Soc.,* 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994); *Deerfield Commun. v. Chesebrough–Ponds,* 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986) (quoting *Citi-*

*bank v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985)). Premised entirely upon the allegations of the SAC, defendants argue that it does not allege conduct of the type that could justify an award of punitive damages. This Court does not agree. Rule 8, Fed.R.Civ. P., requires notice pleading and no more. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Plaintiff has alleged a cause of action, fraud, that is rooted in tort and that, as noted above, has survived a motion to dismiss. The SAC alleges that defendants acted "improperly and egregiously" and "knowingly issued false, improper and excessive chargebacks." (SAC ¶¶ 48, 69) At the pleading stage, these allegations are ample to support a claim for punitive damages. Whether plaintiff will be able to prove the type of "gross" conduct that "involves high moral culpability" or demonstrates "wanton dishonesty" is an entirely different matter that is not presently before the Court. *Rocanova,* 83 N.Y.2d at 613, 612 N.Y.S.2d 339, 634 N.E.2d 940.

### 4. *Violation of General Business Law 349*

General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ." (McKinney's 2004). The aim of the statute is "to secure an honest market place where trust, and not deception, prevails." *Goshen v. Mut. Life Ins. Co.,* 98 N.Y.2d 314, 323–24, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002) (internal quotation marks and citations omitted). It is not necessary that the plaintiff be a consumer or stand in the shoes of a consumer in order to bring a section 349 claim. *See Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995). To make out a prima facie case under section 349, "a plaintiff must demonstrate that (1) the

defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir.2000)(citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). An act is deceptive within the meaning of the statute where a reasonable consumer would have been misled by the defendant's conduct. *Oswego*, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741. Because section 349 is fundamentally a consumer protection statute, contractual disputes between businesses are not encompassed within section 349. *Id.* at 25, 623 N.Y.S.2d 529, 647 N.E.2d 741.

Here, plaintiff IDC asserts in the fourth count that Saks's conduct in illegitimately assessing chargebacks caused plaintiff to raise its prices to retailers which, in turn, caused those retailers to raise their prices to the consuming public. (SAC ¶ 86) While Saks's conduct may have had an impact on the consuming public, the allegations of the SAC cannot be said to allege conduct which is directed at the consuming public. Rather, IDC alleges conduct, the taking of unwarranted allowances and imposition of illegitimate chargebacks, which was directed solely at AGI, a business in the chain of distribution. (SAC ¶ 86) IDC has failed to allege any conduct on the part of defendants which is either consumer-oriented or is part of a pattern directed at the public generally. Section 349 is not implicated in private disputes between two sophisticated businesses. IDC's claim under section 349 is dismissed.

### III. *Saks's Motion for Summary Judgment*

Saks moves for summary judgment on IDC's claims under the N.Y. U.C.C. contending that IDC's claims, to the extent that they rely on conduct which occurred before May 17, 2001, are untimely under the applicable four-year statute of limitation. *See* N.Y. U.C.C. § 2–725(1)(McKinney's 1962). IDC does not dispute that more than four years elapsed between some of defendants' alleged conduct and the commencement of this action. Rather, IDC relies on New York's General Obligations Law ("G.O.L.") § 17–301(4)(b), which precludes the application of the bar of the statute of limitations where a party by "fraud, misrepresentation or deception" is induced to refrain from filing suit.

#### 1. *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004).

When the moving party has met its initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or deni-

als" of the facts asserted by the movant. Rule 56(e), Fed.R.Civ.P. In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In considering Saks's motion, I have viewed all evidence in the light most favorable to plaintiff as the non-movant and drawn all reasonable inferences in plaintiff's favor. Pursuant to Local Rule 56.1, Saks submitted a statement of material facts that it considers not to be in dispute and IDC has responded.

### 2. *Claims Under the New York Uniform Commercial Code Are Not Untimely*

 Claims arising under the N.Y.U.C.C. are subject to a four-year statute of limitations. *See* N.Y. U.C.C. § 2–725(1)(McKinney's 1962) However, under certain circumstances, a court may find that it is inequitable to permit a party to raise a statute of limitations defense. G.O.L. § 17–301(4)(b) provides that "a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." In order for a defendant to be estopped under section 17–301(4)(b), a plaintiff must allege that defendant mislead plaintiff and that the misrepresentations either induced plaintiff to delay the commencement of the action or prevented plaintiff from initiating the action. *See Simcuski v. Saeli,* 44 N.Y.2d 442, 448–49, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978); *T & N PLC v. Fred S. James & Co. of New York, Inc.,* 29 F.3d 57, 62 (2d Cir. 1994).

IDC acknowledges that so much of its N.Y.U.C.C. claim as arose prior to May 17, 2001 are facially barred by the statute of limitations. Relying upon G.O.L. § 17–103, IDC contends that defendants should be estopped from asserting the statute of limitations in regard to claims which are based on any misconduct that occurred during and after Saks's 1996 fiscal year. In support of the equitable estoppel argument, IDC cites a press release issued by Saks on March 3, 2005, in which Saks Inc. acknowledged that Saks Fifth Avenue Enterprises, a merchandising division of defendant Saks Fifth Avenue, Inc., had improperly collected vendor markdown allowances during fiscal years 1999–2003, totaling $21.5 million. (Kreindler Aff. Exh. C) The release states "[t]he Company [Saks Inc.] intends to reimburse or otherwise compensate the affected vendors for any improperly collected markdown allowances...." (*Id.* ¶ 3) Defendants assert that plaintiff's allegations in the fifth, sixth and seventh counts "have nothing to do" with the subject of the press release and that defendants have not engaged in conduct which warrants an estoppel from assertion of a statute of limitations defense under G.O.L. § 17–301. There are insufficient facts in the record before me to determine whether there is any substance to the estoppel argument. Defendants' motion for summary judgment as to the fifth, sixth and seventh counts is denied.

### 3. *Counts Eight and Nine for Unjust Enrichment and Quantum Meruit*

 Defendants assert that IDC's claims for unjust enrichment and quantum

meruit should be dismissed as this case is governed by a contract. Under New York law, claims for unjust enrichment and quantum meruit may not be successfully pursued where there is a contract between the parties on the same subject matter. *See Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 841 N.E.2d 742 (2005); *Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987). At this juncture, I cannot determine whether plaintiff has a viable contract claim. Accordingly, I deny defendants' motion and permit the claims for unjust enrichment and quantum meruit to proceed, subject to a renewed motion by defendants at the close of the case.

*CONCLUSION*

For the foregoing reasons, Oscar's motion to intervene is granted and defendants' motion for judgment on the pleadings for failure to join a necessary party is denied. Defendants' motion for judgment on the pleadings is granted as to the fourth count of the Second Amended Complaint, the claim for violation of G.B.L. § 349. Defendants' motion for judgment on the pleadings or summary judgment as to all other counts is denied. The third count is deemed withdrawn as is the sixth count to the extent that it relies on N.Y. U.C.C. § 2–709(1)(b).

SO ORDERED.