================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 104
Commonwealth of Pennsylvania
Public School Employees'
Retirement System, &c., et al.,
             Plaintiffs,

Commerzbank AG, &c.,
             Appellant,
         v.
Morgan Stanley & Co.,
Incorporated, et al.,
             Respondents,
et al.,
             Defendants.


          Joseph D. Daley, for appellant.
          James P. Rouhandeh, for respondents.


STEIN, J.:

          In this case certified to us by the United States Court

of Appeals for the Second Circuit, we must determine whether a

reasonable factfinder could conclude that plaintiff Commerzbank

AG was assigned the right to bring a common-law fraud claim, and

therefore had standing to sue various defendants involved in the

- 1 -

issuance of rated notes by the Cheyne structured investment vehicle (SIV).  The notes in question were originally purchased by Allianz Dresdner Daily Asset Fund (DAF), subsequently sold to a branch of Dresdner Bank AG in 2007, and ultimately acquired by Commerzbank through its merger with Dresdner in 2009.  Because Commerzbank has failed to present any evidence of a communicated intent by DAF and Dresdner to assign to Dresdner the right to sue for fraud in connection with the transaction through which DAF purchased the notes, we hold that Commerzbank has failed to raise a question of fact regarding standing.

## I.

The facts and procedural history of this action are explained in more detail in the underlying decisions of the District Court (888 F Supp 2d 478 [SD NY 2012]; 910 F Supp 2d 543 [SD NY 2012]; 888 F Supp 2d 431 [SD NY 2012]; 269 FRD 252 [SD NY 2010]) and the Second Circuit (772 F3d 111 [2d Cir 2014], as amended [Nov 12, 2014]).  As particularly relevant here, defendants Morgan Stanley & Co., Incorporated and Morgan Stanley & Co. International Limited (collectively, Morgan Stanley) arranged and placed notes for the Cheyne SIV, which was launched in 2005.  To attract investors, defendants Standard & Poor's Ratings Services and the McGraw-Hill Companies, Inc. (collectively, S & P) and Moody's Investors Service, Inc. and Moody's Investors Service Ltd. (collectively, Moody's) -- nationally recognized statistical rating organizations -- were

engaged to rate the notes.  Between 2005 and 2007, the Cheyne SIV issued several classes of notes on a rolling basis.  These notes received top credit ratings from Moody's and S & P, which ratings were included in documents distributed to potential investors by Morgan Stanley.  Investors who purchased the notes purportedly relied on these ratings.

The notes issued by the Cheyne SIV -- which included a significant number of subprime residential mortgage-backed securities -- were downgraded by S & P and placed on review for downgrade by Moody's after the SIV breached its "Major Capital Loss Test" in 2007.  That breach triggered "an irreversible operating state requiring that a receiver be appointed to manage the SIV in order to sell its assets and repay maturing liabilities."  Allegedly, most, if not all, of the value of the Cheyne SIV notes was eradicated.

In 2009, this action was commenced against Morgan Stanley and the rating agencies in the federal District Court of the Southern District of New York by Abu Dhabi Commercial Bank and other institutional investors that had purchased or acquired Cheyne SIV notes and allegedly suffered damages as a result of the Cheyne SIV's collapse.  Commerzbank -- which held Cheyne SIV notes that it had purchased directly, in addition to the notes that had originally been purchased by DAF and subsequently acquired by Commerzbank -- eventually joined the action as a named plaintiff.  Plaintiffs, including Commerzbank, asserted

causes of action sounding in fraud, aiding and abetting fraud, and negligent misrepresentation against Morgan Stanley and the rating agencies.  More specifically, plaintiffs asserted that defendant rating agencies, at the behest of Morgan Stanley, knowingly issued fraudulently high ratings that did not reflect the true risks of the Cheyne SIV notes.  As alleged in the complaint, these ratings were unreliable, devoid of any meaningful factual or statistical basis, and based on outdated models and inaccurate information.  According to plaintiffs, when Morgan Stanley distributed materials containing the ratings to potential investors, it knew that the ratings were false and misleading, and Morgan Stanley therefore made materially misleading statements and omissions that led plaintiffs to purchase Cheyne SIV notes, believing they were a safe investment.

Following discovery, Morgan Stanley and the rating agencies moved for summary judgment dismissing plaintiffs' fraud claims and questioned, among other things, whether Commerzbank had standing to sue for fraud on the Cheyne SIV notes originally purchased by DAF and whether Morgan Stanley had made any actionable misstatements.  Defendants also argued that plaintiffs could not establish justifiable reliance on the ratings.  With respect to the reliance element, the District Court limited plaintiffs to a single three-page declaration to demonstrate whether and how they had relied on the ratings when investing in Cheyne SIV notes.  In the declaration submitted by plaintiffs,

Commerzbank asserted that Dresdner purchased Cheyne SIV notes "at par" from its affiliate, DAF, in October 2007, and that Dresdner was acquired by Commerzbank in January 2009 which, under German law, meant that all of Dresdner's "assets, liabilities, rights and obligations passed automatically by operation of law to Commerzbank and Dresdner ceased to exist as a legal entity."

As pertinent here, the District Court granted defendants' motion for summary judgment in part, dismissing Commerzbank's claims insofar as they were based on the notes purchased by DAF, and dismissing plaintiffs' fraud claim against Morgan Stanley (888 F Supp 2d at 447-448, 478). With respect to standing, the Court held that, although Commerzbank may have acquired all causes of action possessed by Dresdner, it had provided no evidence that DAF, in the first instance, had assigned to Dresdner any tort causes of action connected to the notes (see id. at 447-448). As for the dismissal of the fraud claim against Morgan Stanley, the Court determined that the ratings were attributable solely to the rating agencies (see id. at 448-453). In the absence of a fraudulent statement made by Morgan Stanley, the Court held that Morgan Stanley could be liable, at most, for aiding and abetting fraud (see id.). The Court also found that questions of fact precluded summary judgment on Commerzbank's fraud claims against the rating agencies and its aiding and abetting cause of action against Morgan Stanley based on the notes purchased directly by

Commerzbank (see id. at 458-468, 477-478).

Commerzbank moved for reconsideration of the standing issue and proffered, as pertinent here, two additional declarations to support its contention that DAF had assigned its fraud claims to Dresdner. More specifically, Commerzbank provided a declaration from Christopher Williams, former Secretary of and Senior Counsel to Dresdner Advisors (DAF's investment advisor) and former Senior Counsel to the branch of Dresdner that purchased the notes from DAF. Williams explained that DAF did not typically enter into written agreements when purchasing or selling securities. He further explained that, when the Cheyne SIV notes were downgraded in 2007, DAF was prohibited from continuing to hold them by federal rules promulgated under the Investment Company Act of 1940. "[I]n order to ensure DAF's compliance" with such rules, Dresdner therefore purchased the notes from DAF for cash "at par" for $121,078,069. DAF ceased operations 10 months later and was terminated in January 2009. Williams asserted that, to the best of his knowledge, DAF and Dresdner believed that any causes of actions or claims related to the notes would automatically transfer with them.

Commerzbank also submitted a declaration by Brian Shlissel, Managing Director of Allianz Global Investors Fund Management LLC, which administered DAF as a series of a Massachusetts business trust known as Allianz Global Investors

Managed Accounts Trust, of which Shlissel was the President and Chief Executive Officer.  Shlissel similarly attested to the foregoing facts regarding DAF's sale of the notes to Dresdner, and he asserted that the parties to the sale believed that any causes of action related to the notes would automatically transfer to Dresdner with the notes themselves.

The District Court denied Commerzbank's motion for reconsideration, declining to consider its additional submissions (888 F Supp 2d at 490-491).  Commerzbank appealed.

The Second Circuit held that the District Court abused its discretion by refusing to consider Commerzbank's supplemental papers, but determined that resolution of the standing issue would require it to pass on an open question of New York law; namely, whether proof of a subjective, uncommunicated intent to transfer a whole interest in a note -- in the absence of limiting language -- suffices to transfer an assignor's tort claims related to such note under New York law (772 F3d at 121).[1] Accordingly, the Second Circuit certified to us the question whether, "[b]ased on the declarations and documentary evidence presented by Commerzbank, . . . a reasonable trier of fact

---

[1]  The Second Circuit did not reach the merits of Commerzbank's motion to ratify its claim by a successor entity to DAF under Federal Rules of Civil Procedure rule 17 (a) (3), but commented that the motion, which must be made within a "reasonable time" of the standing objection, was not made until over one year after defendants' answers raised the standing issue (772 F3d 111, 122 n 5 [2d Cir 2014], as amended [Nov 12, 2014]).

[could] find that DAF validly assigned its right to sue for common law fraud to Dresdner in connection with its sale of Cheyne SIV notes" (id. at 125).[2]  Further, if we answer the first question in the affirmative, the Second Circuit asked us to determine whether, "based on the record established in the summary judgment proceedings in the district court, . . . a reasonable trier of fact [could] find Morgan Stanley liable for fraud under New York law" (id.).

We accepted certification (24 NY3d 1028 [2014]), and now answer the first question in the negative.  We, therefore, have no occasion to pass on the second.

## II.

Commerzbank contends that its proffered evidence precludes the granting of summary judgment in defendants' favor on the issue of whether Commerzbank has standing to pursue a fraud claim arising out of DAF's purchase of the Cheyne SIV notes that Commerzbank subsequently acquired.  According to Commerzbank, any fraud claims possessed by DAF were assigned to Dresdner in light of the "unqualified" nature of DAF's sale of its "whole interest" in the notes to Dresdner.  Commerzbank also argues that the Williams and Shlissel declarations are sufficient to demonstrate the intent of DAF and Dresdner to assign to Dresdner all causes of action associated with the notes.

---

[2]  Commerzbank's standing to sue with respect to the notes that it purchased directly is not at issue.

Finally, relying on Banque Arabe et Internationale
D'Investissement v Maryland Nat. Bank (57 F3d 146 [2d Cir 1995])
and International Design Concepts, LLC v Saks Inc. (486 F Supp 2d
229 [SD NY 2007]), Commerzbank asserts that the circumstances
surrounding the 2008 sale of the Cheyne SIV notes provide a
sufficient basis upon which a factfinder could conclude that,
when the notes were transferred, the parties to the sale intended
to assign any potential fraud claims related thereto.  We find
these arguments unpersuasive.

        To be sure, fraud claims are freely assignable in New
York (see Banque Arabe, 57 F3d at 151-153; Glen Banks, 28 NY
Prac, Contract Law § 15:4; see also General Obligations Law §
13-101).  It has long been held, however, that the right to
assert a fraud claim related to a contract or note does not
automatically transfer with the respective contract or note (see
Argyle Capital Mgt. Corp. v Lowenthal, Landau, Fischer & Bring,
261 AD2d 282, 283 [1st Dept 1999], lv denied 93 NY2d 817 [1999];
Tycon Tower I Inv. Ltd. Partnership v Burgee Architects, 234 AD2d
748, 749 [3d Dept 1996], lv denied 90 NY2d 804 [1997]; Ettar
Realty Co. v Cohen, 163 AD 409, 411 [1st Dept 1914]; Fox v
Hirschfeld, 157 AD 364, 365-368 [1st Dept 1913]; Weylin Hotel
Corp. v Ritter, 114 NYS2d 158, 159 [Sup Ct, NY County 1952], affd
280 AD 785 [1st Dept 1952]; see also State of Cal. Pub.
Employees' Retirement Sys. v Shearman & Sterling, 95 NY2d 427,
436 [2000]; Banque Arabe, 57 F3d at 151).  Thus, where an

assignment of fraud or other tort claims is intended in conjunction with the conveyance of a contract or note, there must be some language -- although no specific words are required -- that evinces that intent and effectuates the transfer of such rights (see State of Cal. Pub. Employees' Retirement Sys., 95 NY2d at 432; Tycon Tower I Inv. Ltd. Partnership, 234 AD2d at 749; see also Banque Arabe, 57 F3d at 151-152; see generally Leon v Martinez, 84 NY2d 83, 88 [1994]).  Without a valid assignment, "only the . . . assignor may rescind or sue for damages for fraud and deceit" because "the representations were made to it and it alone had the right to rely upon them" (Nearpark Realty Corp. v City Inv. Co., 112 NYS2d 816, 817 [Sup Ct, NY County 1952]; see Fox, 157 AD at 365-368; see also Banque Arabe, 57 F3d at 151; Fraternity Fund Ltd. v Beacon Hill Asset Mgt., LLC, 479 F Supp 2d 349, 373 [SD NY 2007]).

Our review of the record fails to reveal any proof of an assignment of fraud or, more generally, tort causes of action. Crucial to our analysis, Commerzbank concedes that there was no "explicit" assignment of DAF's common law fraud claims to Dresdner in connection with DAF's sale of the notes.  Rather, Commerzbank contends that the transfer of the notes was "unqualified" and, therefore, implicitly included claims related thereto.  At its core then, Commerzbank's argument amounts to little more than an assertion that, in the absence of language to the contrary, DAF's tort claims necessarily transferred to

Dresdner with the notes.  However, this is contrary to the law in New York, which requires either some expressed intent or reference to tort causes of action, or some explicit language evidencing the parties' intent to transfer broad and unlimited rights and claims, in order to effectuate such an assignment (compare Banque Arabe, 57 F3d at 152 [assignment of interest and rights in "transaction," rather than contract, broad enough to encompass tort claims] and International Design, 486 F Supp 2d at 237 [assignment language expressly stated "without limitation"] with State of Cal. Pub. Employees' Retirement Sys., 95 NY2d at 435-436 [assignment of rights and interests arising out of loan documents and promissory note did not assign cause of action for malpractice against drafter of loan documents]).

The declarations of Williams and Shlissel are insufficient, as a matter of law, to demonstrate that the parties expressed an intent to and did, in fact, undertake an assignment of fraud claims in connection with the conveyance of the notes at the time of the sale.  Williams and Shlissel averred only that DAF and Dresdner assumed that DAF's rights and causes of action would transfer automatically with the note; neither declarant claimed that the assignment of tort claims was actually discussed or negotiated by the parties prior to or at the time of the transfer, or that the sale of the notes in any way referenced the simultaneous assignment of such claims.  This deficiency is fatal to Commerzbank's argument that it has standing (see generally

_Wells v Shearson Lehman/American Express_, 72 NY2d 11, 24 [1988]
["uncommunicated subjective intent alone cannot create an issue
of fact where otherwise there is none"]; _Property Asset Mgt.,
Inc. v Chicago Tit. Ins. Co., Inc._, 173 F3d 84, 87 [2d Cir
1999]).

As Commerzbank points out, in _Banque Arabe_ (57 F3d 146)
and _International Design_ (486 F Supp 2d 229) the Second Circuit
and District Court, respectively, took note of the circumstances
surrounding the transfers in question when considering whether
the parties assigned tort causes of action.  However, these cases
do not stand for the proposition that Commerzbank espouses --
namely, that the surrounding circumstances can be sufficient, in
the absence of any supporting language, to raise a question of
fact regarding whether an assignment of tort claims was effected.
In both _Banque Arabe_ and _International Design_, the Courts _first_
concluded that the language of the assignment encompassed tort
claims before reinforcing their conclusions by reference to the
circumstances of the transaction (_see_ _Banque Arabe_, 57 F3d at 152
[concluding that the "language in the Assignment alone is
sufficient to demonstrate (the assignor's) intent to transfer all
of [its] rescission and fraud claims"]; _International Design_, 486
F Supp 2d at 236-237 [noting that "(t)he words of the assignment
are of paramount importance" and that the assignment there
expressly provided that it was "without limitation"]).  By
contrast, the only language used to convey the notes here is

contained in the confirmation letter sent by Dresdner, which merely referred to the purchase of "each of the Cheyne Holdings," and the declarations of Williams and Shlissel, which similarly fail to contain any assertion that the parties to the sale referenced or assigned tort causes of action.

In any event, the circumstances here would be insufficient to raise a question of fact as to whether DAF intended to assign to Dresdner potential fraud causes of action based on the ratings.  Although Dresdner bought the Cheyne SIV notes after they were devalued, Commerzbank presented no evidence that the sale was in contemplation of DAF's dissolution, as it was in Banque Arabe (compare 57 F3d at 152), and DAF was not terminated until a year after the sale (compare International Design, 486 F Supp 2d at 237 [assignor was a defunct entity at the time of the sale]).  Nor would Dresdner's purchase of the notes after they were devalued compel the conclusion that Dresdner must have intended to assume any potential fraud claims, particularly in light of Williams' assertion that Dresdner purchased the notes "in order to ensure DAF's compliance" with federal rules.  Indeed, there is no indication that Dresdner and DAF were even aware, at the time of the sale, that any potential fraud claims existed (see Fox, 157 AD at 369).  Likewise, on this record, Dresdner's purchase of the notes "at par" lends no support to Commerzbank's position since the sale price was mandated by federal rules (see 17 CFR 270.17a-9 [a]).  Thus, the

circumstances surrounding this transaction are plainly distinguishable from those in <u>Banque Arabe</u> and <u>International Design</u>, and Commerzbank's reliance on those cases is unavailing.

Because DAF's sale of the notes, in the conceded absence of any expression of a contemporaneous intent to transfer related tort claims to Dresdner, did not, under New York law, effectuate an assignment of the fraud claim Commerzbank now seeks to pursue, Commerzbank has failed to raise a question of fact concerning standing. Accordingly, the first certified question should be answered in the negative and the second certified question not answered as academic.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, first certified question answered in the negative and second certified question not answered as academic. Opinion by Judge Stein. Chief Judge Lippman and Judges Read, Pigott, Rivera, Abdus-Salaam and Fahey concur.

Decided June 30, 2015