**13-2095-cv (L)**
Pennsylvania Public School Employees' Retirement System v. Morgan Stanley & Co. Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: June 20, 2014                    Decided: October 31,2014)

Docket Nos. 13-2095-cv(L), 13-2283-cv(XAP), 13-2286-cv(XAP),
                        13-2287-cv(XAP)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
COMMONWEALTH OF PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT
SYSTEM, together and on behalf of all others similarly situated,
COMMERZBANK AG, together and on behalf of all others similarly
situated,

            Plaintiffs-Appellants-Cross-Appellees,

ABU DHABI COMMERCIAL BANK, individually and on behalf of all
others similarly situated, KING COUNTY, WASHINGTON, together and
on behalf of all others similarly situated, SEI INVESTMENTS
COMPANY, together and on behalf of all others similarly situated,
THE BANK OF N.T. BUTTERFIELD & SON LIMITED, SFT COLLECTIVE
INVESTMENT FUND, DEUTSCHE POSTBANK AG, GLOBAL INVESTMENT SERVICES
LIMITED, GULF INTERNATIONAL BANK B.S.C., NATIONAL AGRICULTURAL
COOPERATIVE FEDERATION, together and on behalf of all others
similarly situated, STATE BOARD OF ADMINISTRATION OF FLORIDA,
together and on behalf of all others similarly situated, BANK
SINOPAC, together and on behalf of all others similarly situated,
BANK HAPOALIM B.M., together and on behalf of all others
similarly situated, KBL EUROPEAN PRIVATE BANKERS S.A.,

            Plaintiffs,

                v.

MORGAN STANLEY & CO., INCORPORATED, MORGAN STANLEY & CO.
INTERNATIONAL LIMITED, MOODY'S INVESTOR SERVICE, INC., MOODY'S
INVESTOR SERVICE, LTD., THE MCGRAW-HILL COMPANIES, INC., STANDARD
& POOR'S RATING SERVICES,

            Defendants-Appellees-Cross-Appellants,

1

CHEYNE CAPITAL MANAGEMENT LIMITED, CHEYNE CAPITAL MANAGEMENT (UK) LLP, CHEYNE CAPITAL INTERNATIONAL LIMITED, THE BANK OF NEW YORK MELLON, formerly known as The Bank of New York, QSR MANAGEMENT LIMITED,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, LEVAL, and LYNCH, Circuit Judges.

Appeal from a judgment entered in the United States District Court for the Southern District of New York (Shira A. Scheindlin, Judge) denying class certification, dismissing appellant Commerzbank's fraud claims for lack of standing, and dismissing appellant Commonwealth of Pennsylvania Public School Employees' Retirement System's claims for lack of diversity jurisdiction. We affirm the denial of class certification and the dismissal of PSERS's claim, and we certify questions dispositive of Commerzbank's appeal to the New York Court of Appeals.

LUKE O. BROOKS (Joseph D. Daley & Daniel S. Drosman, San Diego, CA) Robbins Geller Rudman & Dowd LLP, San Francisco, CA, for Plaintiffs-Appellants-Cross-Appellees.

JAMES P. ROUHANDEH (Antonio J. Perez-Marques, Paul S. Mishkin, Jessica L. Turner, on the joint brief) Davis Polk & Wardwell LLP, New York, NY, for Defendants-Appellees-Cross-Appellants Morgan Stanley & Co. Inc. and Morgan Stanley & Co. Int'l Ltd.

Dean Ringel, Jason M. Hall, Roxana Labatt, Cahill Gordon & Reindel LLP, New York, NY, on

the joint brief, for Defendants-Appellees-Cross-Appellants Standard & Poor's Ratings Services and The McGraw-Hill Companies, Inc.

Joshua M. Rubins, James J. Coster, Mario Aieta, James I. Doty, Satterlee Stephens Burke & Burke LLP, New York, NY; Mark A. Perry, Gibson, Dunn & Crutcher LLP, Washington, DC, on the joint brief, for Defendants-Appellees-Cross-Appellants Moody's Investors Service, Inc. and Moody's Investors Service Ltd.

WINTER, Circuit Judge:

The Commonwealth of Pennsylvania Public School Employees' Retirement System ("PSERS") and Commerzbank AG ("Commerzbank") appeal from Judge Scheindlin's order of final judgment. See Fed. R. Civ. P. 54(b). That judgment encompassed several previous orders that, as relevant to this appeal: (i) denied class certification under Fed. R. Civ. P. 23 based on appellants' failure to establish numerosity and predominance of common issues; (ii) dismissed Commerzbank's claim for lack of standing; and (iii) dismissed PSERS's claim because its presence as a party would destroy complete diversity, the sole basis of subject matter jurisdiction. We affirm the denial of class certification and dismissal of PSERS. However, we hold that it was not a permissible exercise of discretion for the district court to limit Commerzbank's ability to establish its standing. We

3

certify to the New York Court of Appeals the question of whether a reasonable trier of fact could find that Commerzbank had acquired from a third party that had purchased securities a fraud claim against Morgan Stanley & Co. ("Morgan Stanley"). We also certify the question whether, if Commerzbank has standing, a reasonable trier of fact could hold Morgan Stanley liable for fraud based on the present record.

BACKGROUND

a) The Cheyne SIV

We view all disputed facts and inferences fairly drawn from those facts in the light most favorable to appellants. Salamon v. Our Lady of Victory Hosp., 514 F.3d 217, 226 (2d Cir. 2008).

The present dispute arose out of the collapse of the Cheyne SIV, a structured investment vehicle ("SIV") that was managed by Cheyne Capital ("Cheyne") (a defendant but not a party to this appeal) and structured by appellee Morgan Stanley. Cheyne SIV was launched in 2005 and issued several classes of notes amounting to several billion dollars, before its demise in 2007. The notes had different maturities, return rates, and risk profiles. Because of the complexity of the SIV, the notes could be purchased only by sophisticated institutional investors. Three specific notes are at issue: senior commercial paper notes, senior medium term notes, and mezzanine capital notes. All of them were given high ratings (the senior notes received

4

higher ratings) by the ratings agencies named as defendants: Standard & Poor's Ratings Services and the McGraw-Hill Companies, Inc. ("S&P"); and Moody's Investors Service, Inc. and its subsidiary Moody's Investors Service Ltd..

Morgan Stanley included those ratings in selling documents distributed to potential investors. According to appellants, the ratings were unreliable because they were based on outdated models and data. The ratings agencies are alleged to have known of this unreliability. It is also alleged that the use of unreliable models was caused by Morgan Stanley's demand for high ratings. Thus, according to the complaint, the Cheyne SIV as a whole received a triple-A rating despite being loaded with very risky assets, including a significant profile of subprime residential mortgage-backed securities. As is well known, the housing market collapsed in the summer of 2007. The SIV collapsed with it and declared bankruptcy in the fall of 2007.

b) <u>Procedural History</u>

Following Cheyne's collapse, this lawsuit was filed as a putative class action by Abu Dhabi Commercial Bank ("ADCB") on August 25, 2008. ADCB's complaint alleged common law fraud under New York law and based federal subject matter jurisdiction on diversity of citizenship under 28 U.S.C. § 1332(a). Two additional plaintiffs later joined. They eventually moved for class certification on the common law fraud claims seeking to

represent a class of all investors in the Cheyne SIV who purchased notes during a class period from October 2004 to October 2007. The district court denied that motion, holding that plaintiffs failed to establish numerosity and the predominance of common issues. Interlocutory review was denied. Plaintiffs' counsel were then allowed to contact other investors, which led to the addition of twelve new plaintiffs, including Commerzbank and PSERS.

In January 2012, appellants filed the complaint operative for purposes of this appeal. Appellees responded with motions to dismiss and for summary judgment on the fraud-related claims shortly thereafter. In their motion for summary judgment, appellees raised, <u>inter alia</u>, the issues before us on appeal: whether Commerzbank had acquired from the original purchaser of some of the notes the purchaser's fraud claim against Morgan Stanley, and whether Morgan Stanley had made actionable misrepresentations.

In responding to the motion for summary judgment, all fifteen plaintiffs, including appellants, were limited by the district court to a single three-page "reliance declaration" necessary to establish the reliance of each plaintiff on the alleged misstatements as required to support a valid fraud claim under New York law. With regard to Commerzbank's claim, that declaration stated that Commerzbank had acquired Dresdner Bank AG

("Dresdner") through a merger in 2009, and that Dresdner had earlier purchased Cheyne SIV notes from Allianz Dresdner Daily Asset Fund ("DAF"), the original purchaser, at par –– face value –– after which DAF was "wound down." The declaration further stated that, under German law, "all of Dresdner's assets, liabilities, rights and obligations passed automatically by operation of law to Commerzbank."

On August 17, 2012, the district court granted appellees' motion for summary judgment in part. As relevant to this appeal, the court held that Commerzbank had failed to establish standing to sue under New York law. It held that, for a subsequent holder of a note to have standing to sue entities involved in the issuance of the note for torts committed in the issuance, the prior holder of a note must assign its tort claims at the time of transfer, and that a simple transfer of the note did not assign those claims. The court determined that Commerzbank's statement in the reliance declaration had not shown that Dresdner acquired DAF's tort claims through the transfer and merger. Commerzbank's claims were, therefore, dismissed. The court did not reach appellees' argument that DAF had not reasonably relied on the Cheyne SIV credit ratings.

The district court also dismissed claims against Morgan Stanley for fraud on the grounds that the only misstatements alleged were made by the ratings agencies themselves and that

7

these were not attributable to Morgan Stanley. Therefore, the court reasoned, Morgan Stanley could not be held liable for fraud based on third-party misstatements under New York law.

Commerzbank moved for reconsideration of the dismissal of its fraud claims. Attached to the motion was a new declaration ("Williams declaration") that explained the transfer of rights from DAF to Dresdner to Commerzbank. Ten days later, Commerzbank also filed a Fed. R. Civ. P. 17(a)(3) "ratification" of its claim and another declaration ("Shlissel declaration"). These documents were a far more thorough explanation of how DAF was unable, and could not have intended, to retain any interest in the notes, including a right to sue. The court refused to consider the two documents because they were untimely and denied reconsideration.

In November 2012, appellees discovered that PSERS had previously represented that it was an arm of the state of Pennsylvania -- now conceded -- and not a citizen of that or any state, as required by 28 U.S.C. § 1332(a). See infra n.1. Appellees accordingly moved to dismiss either PSERS's claims, or the entire action, because PSERS's presence as a plaintiff destroyed complete diversity. The district court held that 28 U.S.C. § 1367 did not permit supplemental jurisdiction over a non-diverse party's claims where jurisdiction was based on diversity, even where that party was permissively joined, as

8

PSERS was, under Fed. R. Civ. P. 20.  The court therefore dismissed PSERS from the action to preserve its subject matter jurisdiction.

All plaintiffs other than appellants agreed to settle following mediation.  The action was dismissed with prejudice, and the court entered a Fed. R. Civ. P. 54(b) final judgment incorporating its previous dismissals of PSERS and Commerzbank. This appeal followed.

DISCUSSION

a) <u>Dismissal of PSERS as a Non-Diverse Plaintiff</u>

There being no disputed facts, PSERS's dismissal for lack of subject matter jurisdiction is reviewed <u>de novo</u>.  <u>Salamon</u>, 514 F.3d at 226.

Subject matter jurisdiction is based on 28 U.S.C. § 1332,[1] which requires "complete diversity," <u>i.e.</u> all plaintiffs must be citizens of states diverse from those of all defendants.  <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 553 (2005). The party asserting jurisdiction bears the burden of proof. <u>DiTolla v. Doral Dental IPA of N.Y.</u>, 469 F.3d 271, 275 (2d Cir. 2006).

---

[1] "The district courts shall have original jurisdiction of all civil matters where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states . . . ."  28 U.S.C. § 1332(a)(1).

9

As an arm of the state of Pennsylvania, PSERS concedes that it is not a citizen of any state. Therefore, it cannot be "diverse" for purposes of Section 1332. Moor v. Cnty. of Alameda, 411 U.S. 693, 717 (1973) (the "arm or alter ego" of a state is not a citizen for diversity purposes (quoting State Hwy. Comm'n of Wyo. v. Utah Constr. Co., 278 U.S. 194, 199 (1929))).

PSERS nonetheless claims that the district court had supplemental jurisdiction under 28 U.S.C. § 1367, which permits the exercise of diversity jurisdiction over related claims, "includ[ing] claims that involve the joinder or intervention of additional parties," subject to relevant statutory exceptions. 28 U.S.C. § 1367(a). The issue is whether PSERS's inclusion as a party is consistent with Section 1367(b), an exception preventing the exercise of supplemental jurisdiction over joined parties in diversity cases when their inclusion "would be inconsistent with the jurisdictional requirements of section 1332."

In Exxon, the Supreme Court considered the question of whether the Section 1367(b) exception prevented supplemental jurisdiction over plaintiffs who failed to meet the Section 1332 amount-in-controversy requirement, and held that it did not. 545 U.S. at 559-60. In its discussion, the Supreme Court articulated a "contamination theory" governing the interaction of Sections 1332 and 1367. In explaining the theory, the Court noted that, while "original jurisdiction" may not literally be required over

10

each individual plaintiff, the view that the inclusion of a non-diverse party "somehow contaminates every other claim in the complaint, depriving the court of original jurisdiction . . . can make some sense in the special context of the complete diversity requirement . . . [because it] eliminates the justification for providing a federal forum."  Id. at 560, 562.

We elaborated on the contamination theory in Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 179 (2d Cir. 2007). Our discussion there stated:

> Exxon makes clear that its expansive interpretation of § 1367 does not extend to additional parties whose presence defeats diversity.  The reason for the different treatment of these two § 1332 requirements is found in their differing purposes.  The purpose of the amount-in-controversy requirement, on one hand, is fulfilled by a single claim of sufficient importance to warrant a federal forum and is not negated by additional, smaller claims.  A failure of diversity, on the other hand, contaminates the action, so to speak, and takes away any justification for providing a federal forum.
> It follows that a defect of the latter sort eliminates every claim in the action, including any jurisdictionally proper action that might otherwise have anchored original jurisdiction, and removes the civil action from the purview of § 1367 altogether. Further, it is clear that a diversity-destroying party joined after the action is underway may catalyze loss of jurisdiction.

Id. (all internal citations and quotations omitted).  This discussion thus adopts the line hinted at in Exxon, namely, that while the amount-in-controversy requirement is somewhat

11

malleable, complete diversity of all parties is an absolute, bright-line prerequisite to federal subject matter jurisdiction. We follow this rationale and hold that PSERS's dismissal was proper, because inclusion of its claim destroyed complete diversity and would have otherwise "catalyze[d] loss of [federal] jurisdiction." Id.

PSERS attempts to distinguish Merrill Lynch by noting that it, PSERS, was permissively joined as a plaintiff under Fed. R. Civ. P. 20, while Merrill Lynch involved compulsory joinder of a defendant under Rule 19. It further seeks to explain away Exxon's discussion as dicta. We concede that PSERS's argument for a distinction between parties permissibly and compulsorily joined is not without some appeal. Moreover, on these particular facts, the contamination theory is less obviously applicable because PSERS is not "non-diverse" but is simply not a citizen. And, because it is the arm of a non-forum state, there is an arguable need for a federal forum.

Nonetheless, the discussions of complete diversity in Exxon and Merrill Lynch follow a long line of cases holding that the jurisdictional requirements of diversity should track easily adjudicated bright lines following Section 1332(a)(3)'s language of "between citizens of different states." Weighing the need in particular cases for a federal forum is not subject to bright lines at all and is in tension with the statutory language, which

12

omits consideration of such a need.  We, therefore, hold that federal subject matter jurisdiction under Section 1332(a)(3) requires complete diversity of all parties, regardless of how they joined the action.  We note that in addition to being sensible and workable, this rule tracks the statutory language, follows Merrill Lynch, and accords with a decision of the D.C. Circuit, see In re Lorazepam & Clorazepate Antitrust Litig., 631 F.3d 537, 541 (D.C. Cir. 2011) (holding that the D.C. Circuit's absolute, complete diversity requirement remained intact after Exxon).[2]

We thus affirm the dismissal of PSERS's claim.

b)  Denial of Class Certification

District courts' denials of motions for class certification are reviewed for abuse of discretion.  Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 201 (2d Cir. 2008).  The party seeking certification must establish the Fed. R. Civ. P. 23 requirements by a preponderance of the evidence.  Id. at 202.

Under Rule 23, a movant seeking certification of a class must establish:  (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy.  Fed. R. Civ. P. 23(a)(1)-(4); id.

---

[2] PSERS makes an alternative argument that diversity jurisdiction exists under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A).  This argument was not raised in the district court and, as was conceded at oral argument, has no merit unless we reverse the denial of class certification.  Because we affirm that denial, we need not address the argument.

at 201-02.  The district court's analysis of the Rule 23 factors determined that appellants had failed to demonstrate either numerosity or the predominance of common issues.  Fed. R. Civ. P. 23(b).  It did not abuse its discretion in doing so.

Numerosity is presumed for classes larger than forty members.  Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Appellants submitted evidence of the existence of over 100 potential class members based on the number of investors who purchased the various SIV notes.  However, the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including:  (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members.  Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).

The district court concluded that the Robidoux factors "weigh heavily in favor of concluding that joinder is not impracticable."  Specifically, the class was limited and identifiable, and composed of sophisticated SIV investors, all of whom had millions of dollars at stake and were able to pursue their own claims.

14

Appellants contend that this determination was error because the court failed to resolve a dispute over the class's size, and because the class was simply too large not to be certified on that basis. Although the purported class was large and relatively diverse geographically, the district court was within its discretion to conclude that the size, sophistication, and individual stakes of the parties counseled in favor of joinder. See id. at 936 ("Determination of practicability [of joinder] depends on all the circumstances surrounding a case, not on mere numbers."); accord Deen v. New Sch. Univ., No. 05 Civ. 7174 (KMW), 2008 WL 331366, at *3 (S.D.N.Y. Feb. 4, 2008) (denying certification to a putative class of 110 where plaintiffs "provide[d] no evidence that joinder . . . would be difficult to accomplish, or . . . would be somehow less efficient than class certification"); Ansari v. N.Y. Univ., 179 F.R.D. 112, 115-16 (S.D.N.Y. 1998) (denying certification despite geographic dispersion where the identity of the potential plaintiffs was known and the potential class members likely had the financial resources to individually bring suit). We would add that, given the different classes of notes, and their differences in maturity dates, rates of return, and risk-profile, the efficiencies available through class certification are less than the number of potential class members would make them appear.

Appellants' argument regarding commonality is based on a relatively recently created "fraud-created-the-market" theory, i.e., that but for the defendant's fraud, no market for the notes would have existed at all. The district court rejected this theory and determined that the putative class members would face differing individual issues of reliance, loss causation, and damages. See Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1193 (2013) (absence of fraud-on-the-market theory "would ordinarily preclude certification of a class action seeking money damages because individual reliance issues would overwhelm questions common to the class").

The fraud-created-the-market theory is a matter of first impression for us but has been rejected or questioned by four other circuits. See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, 730 F.3d 1111, 1121 n.4 (9th Cir. 2013); Malack v. BDO Seidman LLP, 617 F.3d 743, 756 (3d Cir. 2010); Ockerman v. May Zima & Co., 27 F.3d 1151, 1160 (6th Cir. 1994); Eckstein v. Balcor Film Investors, 8 F.3d 1121, 1130-31 (7th Cir. 1993).

Whatever may be the merits of this putative doctrine in other contexts, we see no reason to give it weight here. The complaint raises only New York common law fraud claims. While the theory is used to argue that none of the notes would have been sold but for the fraud, that argument establishes only "but-for" causation; it does not establish reliance. It is quite

16

possible that some buyers of the notes might have known the underlying facts, believed in the models, and held the same rosy view of the residential housing market as did many government and private financial officers. Appellants thus seek to use the theory to eliminate the need to prove reliance, a traditional element of common law fraud. No hint has been offered by New York courts that such a radical doctrinal shift is in the offing.

Even in the case of the fraud-on-the-market theory,[3] recognized for purposes of federal securities fraud, we "repeatedly have refused to apply [it] to state common law cases." Secs. Investor Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 73 (2d Cir. 2000). Moreover, the record here is replete with significant differences in the investment decision processes of the various putative class members, a variance compounded by the differences between the three types of notes offered by Cheyne. As the district court noted, some investors were permitted only to invest in top-rated instruments, while others were permitted

[3] We note that although the fraud-created-the-market doctrine uses a name similar to the accepted fraud-on-the-market doctrine, the two have little to do with each other. "Fraud-on-the-market" is based on the efficient market hypothesis, which postulates that an efficient market incorporates fraudulent statements into a price viewed by investors as based on available accurate information. See In re Initial Pub. Offerings Secs. Litig., 471 F.3d 24, 42 (2d Cir. 2006) (rejecting application of the fraud-on-the-market theory to establish classwide reliance because a "primary market for newly issued securities is not efficient or developed under any definition of these terms," so the normal linkage between price and available information is not applicable) (internal quotation marks and alterations omitted). "Fraud-created-the-market" asserts that, absent the fraud, the securities in question were unmarketable.

17

to invest in lower or unrated securities.  Particularly in the context of a newly issued instrument, the district court did not err in concluding that class-wide reliance was not established as a common issue.[4]

c)  <u>Commerzbank's Right to Sue Under New York Law</u>

Commerzbank argues that the district court erred in its view of the requirements for assignment under New York law and in refusing to consider the additional documentation meant to meet the standard it applied.  We agree that the district court erred in refusing to consider the additional evidence.  However, we certify the questions of:  (i) whether a trier of fact could find that Commerzbank's evidence of a transfer of the right to sue meets the requirements of New York law; and (ii) whether, if it does, a trier of fact could find Morgan Stanley liable for fraud on the record established in the summary judgment proceeding.

1)  Abuse of Discretion

We review the district court's refusal to consider Commerzbank's evidence of a transfer of DAF's fraud claim for abuse of discretion.  <u>Universal Church v. Geltzer</u>, 463 F.3d 218, 228 (2d Cir. 2005).

---

[4] Although the district court did not reach the issues of adequacy or typicality, we note that the same elements of the case that undercut plaintiffs' commonality and numerosity arguments –- the size of the individual claims, the sophistication of the parties, and, most importantly, the variances in each putative class member's investment strategy and decision-making process and in the notes themselves, cut against class certification on those elements as well.

18

The district court required all fifteen plaintiffs involved at the time of the dismissal to demonstrate each plaintiff's evidence of reliance on the allegedly false ratings in a three-page document, thereby rejecting their request to provide more documentation. There was no indication that the separate issue of a transfer of rights, or standing, might arise from, much less be dependent on, that declaration.

After the district court used Commerzbank's small portion of the three-page statement to raise this issue and to dismiss Commerzbank's claim, the district court denied the motion to reconsider without considering the additional evidence proffered. The district court determined that the level and type of detail provided by Commerzbank in the three-page reliance declaration (of all plaintiffs) was a "tactical decision[]" by which Commerzbank was bound. However, as our certification of this question indicates, the standing issue is sufficiently complicated that a single paragraph, or perhaps even the entire three pages, was unlikely to suffice to provide the detail needed for an informed decision. Commerzbank's "tactical decision" was thus the result of being put in an impossible position by the district court. The court should either have allowed more room for explication originally, called for more explication when it decided to raise the transfer of right to sue issue, or have

19

considered the new evidence proffered in the motion for reconsideration and ratification.[5]

We do not preclude district court efforts to force counsel to make their points efficiently, but where it appears that limits on pages are arbitrarily preventing adequate elaboration of a party's position, some flexibility must be shown by district courts. It was not a permissible exercise of discretion for the district court not to have shown such flexibility in this matter. We now turn to this evidence proffered in the motion for reconsideration.

2) Evidence of a Right to Sue Under New York Law

Generally speaking, under New York law, only the original purchaser of a note has standing to sue for fraud, because only it could have relied upon the fraudulent statements. See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 373 (S.D.N.Y. 2007). The right to sue for fraud may be assigned in New York, however, subject to limitations inapplicable here. See Banque Arabe et Int'l D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 151 (2d Cir. 1995). Federal courts

---

[5] The district court denied Commerzbank's Fed. R. Civ. P. 17(a)(3) motion to ratify its claim by a successor entity to DAF. That motion was made in the alternative to its motion to reconsider, and we decline to reach it in light of our certification of the ultimate issue of standing. We note, however, that the rule permits ratification of a claim within a "reasonable time" after a standing objection is raised, the breadth of which is left to the district court to determine. See Stichting Ter Behartiging v. Schreiber, 407 F.3d 34, 43-44 (2d Cir. 2005). Commerzbank's motion was made on September 10, 2012, after summary judgment and even after the filing of the motion to reconsider, when the matter was raised as early as defendants' answers in March 2011 and again in its motion for summary judgment on January 23, 2012.

have found that an assignment is defined in New York as "a transfer or setting over of property, or of some right or interest therein, from one person to another, and, unless in some way qualified, it is properly the transfer of one whole interest in an estate or chattel or other thing." Int'l Design Concepts, LLC v. Saks, Inc., 486 F. Supp. 2d 229, 236 (S.D.N.Y. 2007) (internal quotation marks omitted). The question in this case is whether Commerzbank has offered sufficient evidence to allow a trier of fact to find that DAF assigned its entire interest in the notes to Dresdner, including, therefore, its right to sue for fraud.

The original reliance declaration stated only that Dresdner bought the notes "at par" from DAF and that DAF was wound down ten months later. We need not decide whether these statements alone are sufficient to permit an inference of transfer because, as discussed supra, it was not a permissible exercise of discretion not to consider the additional evidence submitted. The Williams and Shlissel declarations -- from the New York counsel of Commerzbank and CEO of the successor entity to DAF, respectively -- are significantly more thorough with respect to the issue of transfer. Among other things, they describe in more detail the circumstances surrounding DAF's sale to related entity Dresdner, including the fact that DAF suffered no loss on the sale because Dresdner bought the already-downgraded securities at

21

par, that neither DAF nor the company that administered its trust retained any claims or causes of action, and that all parties believed any claims would be automatically transferred under German law.

The question, therefore, is whether, based on the declarations and documentary evidence presented by Commerzbank, a reasonable trier of fact could find that DAF validly assigned its right to sue for common law fraud to Dresdner in connection with its sale of Cheyne SIV notes.

3) Certification

We believe that resolution of this dispositive question would require us to pass upon a question open under New York caselaw, and that the question should be resolved by the New York Court of Appeals upon a certificate from this court. See 22 N.Y.C.R.R. § 500.27; 2d Cir. R. 0.27.2.

We are not aware of any "controlling precedent of the Court of Appeals." 22 N.Y.C.R.R. § 500.27(a). On the one hand, New York law is clear that specific incantations of "assignment" are unnecessary to perfect a transfer. See Leon v. Martinez, 84 N.Y.2d 83, 88 (1994). Moreover, we have elsewhere noted a general trend in New York toward adopting principles of free assignability of claims, including those of fraud. Banque Arabe, 57 F.3d at 153 (citing N.Y. Gen. Oblig. Law §§ 13-105 & 13-107 (McKinney 1978); ACLI Int'l Commodity Servs., Inc. v. Banque

22

*Populaire Suisse*, 609 F. Supp. 434, 441–42 (S.D.N.Y. 1984)). However, there is also a strain of New York law that treats tort and contractual claims in a particular instrument separately. See *Fox v. Hirschfeld*, 157 A.D. 364, 142 N.Y.S. 261, 262-63 (1st Dep't 1913) (assignment of all rights "in and to the within contract" did not include assignment of the right to sue for fraud).

We believe these jurisprudential trends present an as-yet unresolved issue when applied to this case. Specifically, it is unclear whether the intent of parties to transfer a whole interest, combined with the absence of limiting language, suffices to transfer an assignor's tort claims, or whether an additional, more specific statement of an intent to transfer tort claims is required. We certify that issue to the New York Court of Appeals.

The parties also disagree, of course, regarding Morgan Stanley's liability for the allegedly fraudulent ratings. The need to resolve that dispute depends on the antecedent issue of Commerzbank's standing. However, in the event that the New York Court of Appeals allows Commerzbank's claim to proceed, we further ask it to resolve, and certify to it, the question of Morgan Stanley's potential liability on the present record.

The district court held that, as a matter of New York law, the allegedly fraudulent ratings could be attributed only to the

ratings agencies themselves.  Cf. Eurycleia Partners, LP v. Seward & Kissel, LLP, 849 N.Y.S.2d 510, 512 (1st Dep't 2007) (lawyers and auditors not responsible for fraudulent representations originally made by hedge fund).  Because Morgan Stanley did not issue the ratings, the district court held that it could not be directly liable and that there was no claim of aiding-and-abetting liability.  Appellants argue that Morgan Stanley is nonetheless liable because it exerted pressure on the ratings agencies to obtain the fraudulently high ratings, even participating in a "scheme" to do so.  Indeed, the district court noted that appellants had presented some evidence that Morgan Stanley had "manipulated the Cheyne SIV modeling process to create the ratings it desired," and had otherwise influenced the process beyond simply hiring the agencies.  This would suffice under some New York decisions to impose liability on "parties who make, authorize or cause a [fraudulent] representation to be made."  See Metro. Life Ins. Co. v. Morgan Stanley, No. 651360/2012, 2013 N.Y.Misc. LEXIS 3056, at *34 (N.Y. Sup. Ct. July 8, 2013) (Morgan Stanley could be held liable for false ratings it influenced with false statements and disseminated).  Other New York decisions, however, which were discussed extensively by the district court, Abu Dhabi Commercial Bank v. Morgan Stanley & Co., 888 F. Supp. 2d 431, 448-54 (S.D.N.Y. 2012), seem to foreclose suits against third parties based on the

24

misrepresentations of another, even where that party was alleged to have known about the misstatement; see Mateo v. Senterfitt, 918 N.Y.S.2d 438, 440 (1st Dep't 2011); Eurycleia, 849 N.Y.S.2d at 512.

Therefore, we certify to the New York Court of Appeals a second question to be resolved if that court holds that Commerzbank may bring a fraud claim against Morgan Stanley. That question is whether, on the record established during the summary judgment proceedings, a reasonable trier of fact could find Morgan Stanley liable for fraud under New York law.

CONCLUSION

For the foregoing reasons, we affirm the district court in part, holding that: (i) PSERS's dismissal on grounds that its status as a party destroyed complete diversity under 28 U.S.C. § 1332 was correct; and (ii) the district court's denial of class certification under Fed. R. Civ. P. 23 was within its discretion.

However, we find that the district court erred in refusing to consider Commerzbank's proffered evidence with regard to a transfer of the fraud claim it seeks to bring. We further conclude that the question of standing turns on an unresolved issue of state law, and thus certification to the New York Court of Appeals pursuant to Second Circuit Local Rule § 0.27.2 and New York Court of Appeals Rule § 500.27, is appropriate. We also certify a second question: whether, if Commerzbank can pursue

25

its fraud claim, a reasonable trier of fact could find Morgan Stanley liable based on the evidence adduced during the summary judgment proceedings.  This panel will retain jurisdiction to render a final decision once either certification is denied or we have the benefit of the Court of Appeals's view of the correct legal standard and its application to this case.  The parties are ordered to bear equally any costs that may be required by the Court of Appeals as part of certification.

**CERTIFICATE**

**Commonwealth of Pennsylvania Public School Employees' Retirement System v. Morgan Stanley & Co. Inc.**

**13-2095-cv(L), 13-2283-cv(XAP), 13-2286-cv(XAP), 13-2287-cv(XAP)**

**The following questions are hereby certified to the New York Court of Appeals pursuant to Second Circuit Local Rule § 0.27 and New York Court of Appeals Rule § 500.27, as ordered by the Second Circuit:**

**Based on the declarations and documentary evidence presented by Commerzbank, could a reasonable trier of fact find that DAF validly assigned its right to sue for common law fraud to Dresdner in connection with its sale of Cheyne SIV notes?  If so, based on the record established in the summary judgment**

26

proceedings in the district court, could a reasonable trier of fact find Morgan Stanley liable for fraud under New York law?

The Court of Appeals may, of course, reformulate these issues or resolve other matters it deems relevant.