Kevin JONES, on behalf of himself and others similarly situated, Plaintiffs,

v.

STERLING INFOSYSTEMS, INC., Defendant.

14-CV-3076 (VEC)

United States District Court, S.D. New York.

Signed March 30, 2016

Monica Welby, Sally B. Friedman, Legal Action Center of the City of New York, New York, NY, David A. Searles, Francis & Manshel, LLC, James A. Francis, John Soumilas, Francis & Mailman, P.C., Philadelphia, PA, for Plaintiff.

Michael Charles O'Neil, Albert Edward Hartmann, Reed Smith LLP, Chicago, IL, Casey Devin Laffey, Evan K. Farber, Reed Smith LLP, New York, NY, for Defendant.

## ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff seeks to certify a nationwide class in order to pursue his claim that Sterling Infosystems, Inc. ("Sterling") willfully violates the federal Fair Credit Reporting Act ("FCRA") and its New York analogue when it reports criminal records obtained from the New York Office of Court Administration

("NYOCA")[1] for employment purposes. Defendant opposes class certification, arguing that Plaintiff has not satisfied his burden to demonstrate that the requirements of Rule 23 of the Federal Rules of Civil Procedure have been met. Because Plaintiff has not demonstrated that a class action is the appropriate vehicle to rectify the wrong that Plaintiff alleges Sterling perpetrated, Plaintiff's motion for class certification is DENIED.

## BACKGROUND

Kevin Jones lost a job with Halstead Management Company because Sterling, which had been hired to do a criminal background check on him, reported that he had four criminal convictions when, in fact, he had none. The mistake by Sterling was the result of the facts that there are (at least) two Kevin Joneses in New York with the same date of birth, at least one of whom has a criminal record, and prior to disseminating its report, Sterling did not match all of the identifying information that was available in the court records to the information it had regarding the applicant Kevin Jones in order to determine whether the records it reported related to the correct Kevin Jones. Mem. of Law in Supp. of Pl.'s Mot. for Class Certification ("Pl. Mem.") at 10-14 (Dkt. 39).

Jones seeks to certify a Rule 23(b)(3) class of employees or applicants for employment anywhere in the United States who were the subject of a report sold by Defendant for employment purposes that contained at least one criminal conviction in New York.[2] In addition, the Plaintiff seeks to certify for injunctive relief a subclass of all members of the class who are residents of New York State under Rule 23(b)(2). Pl. Mem. at 3. Plaintiff asserts that Sterling willfully violates the FCRA because it never sends notice to the person about whom it is reporting adverse information, and it never provides complete records. Accordingly, he argues, a class action is appropriate because Sterling violates the statute every time it reports adverse criminal information for employment purposes.

## DISCUSSION

### I. Fair Credit Reporting Act

Jones is pursuing class certification only for his claims that Sterling willfully violated FCRA section 1681k(a), 15 U.S.C. § 1681k(a), and its New York analogue, the New York Fair Credit Reporting Act ("NY-FCRA") section 380–g, N.Y. Gen. Bus. Law, § 380-g.[3] He has also asserted an individual claim that Sterling also violated section 1681e(b) of the FCRA, which requires credit reporting agencies ("CRAs") to follow rea-

---

1. New York State has centralized and monetized the process for obtaining criminal records for employment purposes. NYOCA maintains a portal for electronic searches of criminal records. The portal requires a first and last name and a date of birth. The portal will return only an exact match and only returns middle names and initials if they are part of the underlying record. Def. Sterling Infosystems, Inc.'s Br. in Opp'n to Pl.'s Mot. for Class Certification ("Def. Opp'n") at 3 (Dkt. 44). The NYOCA does not necessarily return other identifying information, including aliases and social security numbers. *See generally* Decl. of Curt Schwall ("Schwall Decl.") (Dkt. 45–1).

2. Plaintiff defines the class in his Complaint as:

 All employees or applicants for employment residing in the State of New York (a) who were the subject of a report sold by Defendant to a third party, (b) that was furnished for an employment purpose, (c) that contained at least one public record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment, (d) within two years from the date of the filing

of this action through and during the pendency of this action, and (e) to whom at the same time it furnished an electronic report, Defendant did not provide electronic notice to the consumer stating that a report was being furnished and containing the name of the person that was to receive the report, or to whom within one hour of when it furnished a non-electronic report Defendant did not mail notice to the consumer stating that a report was being furnished and containing the name of the person that was to receive the report.

Compl. ¶ 47(a). In his motion for class certification, Plaintiff revised the proposed class definition to extend the territorial scope of the proposed class to those residing in "the United States and its Territories" and to limit the contents of the public record to "*New York* public records of a criminal conviction or arrest," but not a civil lien, bankruptcy or civil judgment. Pls. Mem. at 3 (emphasis added).

3. The two statutes are substantially similar. For ease of reading, this opinion will generally cite only the federal statute.

sonable procedures to assure accuracy in the information they report. Compl. at Count VI (Dkt. 2).

The FCRA is a complicated statute that "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). The provision at issue in Plaintiff's motion for class certification, section 1681k(a), relates to the portion of the business of CRAs that involves reporting public record information (such as arrests and convictions) in the employment context. When a CRA is reporting matters of public record that are likely to have an adverse effect on a person's ability to obtain employment, section 1681k(a) requires the CRA to do one of two things: either provide notice to the subject of the report when the report is transmitted or

> maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, ... and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a)(1), (2).

It is undisputed in this case that Sterling does not provide notice to the subject of the reports. Def. Opp'n at 11. Accordingly, a critical issue to be tried is whether Sterling has "strict procedures" that are designed to ensure that the information it reports is "complete and up to date."

Plaintiff's original position was that the statute obligates Sterling to provide a "complete" record, meaning not just the disposition of a criminal case, but every event associated with that criminal conviction (*e.g.*, the date of arrest; arraignment; status conferences). Tr. of Oral Arg., Feb. 10, 2016 ("Tr.") at 5–7 (Dkt. 62–1). Counsel for Plaintiff cited

no precedent for that expansive interpretation, and, when required to brief specifically what constitutes a "complete" record under the statute, Plaintiff shifted his position to argue that a "complete" record is one that includes, at a minimum, "all *personal identifying information* from the underlying publicly available courthouse records—such as actual first name, middle name, last name, social security number, address, and the date of birth of the person convicted." Pl.'s Suppl. Br. in Further Supp. of Mot. for Class Certification ("Pl. Suppl.") at 2 (Dkt. 63) (emphasis in original). Defendant argues that in the context of section 1681k(a), which defines "up to date" but does not define "complete," and reading that section in the context of the entire statute, "complete and up to date" means the "current status of the public record." Def. Sterling Infosystems, Inc.'s Suppl. Br. in Opp'n to Pl.'s Mot. for Class Certification: the Meaning & Interpretation of the Word "Complete," as Used in 15 U.S.C. § 1681k(a)(2) and N.Y. Gen. Bus. Law § 380–g(b) ("Def. Suppl.") at 2 (Dkt. 61).

Defendant is correct that the Court must look at the entire statutory scheme in order to determine the meaning of "complete and up to date." Plaintiff's proffered definition would make some sense if the purpose of § 1681k(a)(2) were to prevent criminal records from being attributed to the wrong person, as occurred here. If that were the purpose, then requiring the CRA to report all identifying information in the record might minimize, if not entirely eliminate, the problem that arises when there is more than one person with the same first and last name and birthdate. The problem with Plaintiff's argument is that there is an entirely different section of the statute (under which Plaintiff is pursuing an individual claim) that is designed exactly for that purpose. Section 1681e(b) requires CRAs to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of reports that are published. Having already mandated reasonable procedures to ensure accuracy, it does not make sense that Congress would have imbued in the word "complete" the obligation Plaintiff advocates. *See Farmer v. Phillips*

Agency, Inc., 285 F.R.D. 688, 697 (N.D. Ga. 2012).

Plaintiff relies on a recent decision from the Eastern District of Virginia that grappled with this question in the context of a motion for summary judgment. In *Henderson v. Corelogic National Background Data, LLC*, 161 F.Supp.3d 389 (E.D. Va. 2016), the court observed that "the parties have not cited, nor has the Court found, a decision determining whether a consumer report can be 'complete' when it includes adverse public record items that pertain to consumers other than the subject consumer." *Id.* at 402. That court held that there was a question of fact whether the defendant maintained "strict procedures" noting that "[i]t simply is not complete under FCRA to say that 'someone named Bill Jones has a conviction record, but whether this is the Bill Jones you are inquiring about, I do not know.'" *Id.* at 403–04.

While this Court understands the *Henderson* court's frustration, its analysis conflated the CRA's obligation under section 1681e(b) to have "reasonable procedures" to deliver accurate records[4] with its obligation under 1681k(a) to have "strict procedures" to deliver complete and up to date records.

■ The most reasonable view of the phrase "complete and up to date" is the one pressed by Sterling. The Court begins with the text of the statute and reviews the statute as a whole, as the Supreme Court instructs we must. *King v. Burwell*, — U.S. —, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015) ("[W]hen deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme. Our duty, after all, is to construe statutes, not isolated provisions." (internal quotation marks and citation omitted)). As noted earlier, neither section 1681k(a)(2) nor the FCRA defines the term "complete." Under the canon of construction

of *noscitur a sociis*, a word that is capable of many meanings "is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). The meaning of the word "complete" in section 1681k(a)(2) is susceptible to multiple and wide-ranging meanings, so its intended meaning must be determined in light of its use as part of the phrase "complete and up to date," and the second sentence of the provision: "[f]or purposes of this paragraph, items of public record relating to arrests, indictments, convictions, ... and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported." 15 U.S.C. § 1681k(a)(2). The plain language of section 1681k(a)(2) supports interpreting "complete" in the context of the currency of the reported public records. On the statute's face, Congress identified the types of public record items with which it was concerned—*i.e.*, records relating to arrests, indictments, convictions, etc.—and highlighted its concern about "the current public record status of the item at the time of the report." *Id.*

■ This interpretation is further supported by the language of the FCRA as a whole. "'The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another. ... [T]he preferred meaning of a statutory provision is one that is consonant with the rest of the statute." *I.R.S. v. WorldCom, Inc. (In re WorldCom, Inc.)*, 723 F.3d 346, 355 (2d Cir. 2013) (quoting *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002)), *cert. denied, WorldCom, Inc. v. I.R.S.*, — U.S. —, 135 S.Ct. 56, 190 L.Ed.2d 31 (2014). As discussed above, section 1681e(b) is more obviously tailored to Plaintiff's complaint of inaccurate attribution

---

4. As the *Henderson* court observed, federal courts have noted that the "strict procedures" requirement of 1681k(a) is necessarily more stringent than the "reasonable procedures" required by 1681e(b). 161 F.Supp.3d at 404 (citing *Poore v. Sterling Testing Sys. Inc.*, 410 F.Supp.2d 557, 572 (E.D. Ky. 2006)). This Court has to wonder whether even the more lenient standard can be

met when the CRA's procedures allow the wrong person's criminal history to be reported—particularly when the person has a common name. Given the detrimental effect on an employment applicant of being erroneously branded a criminal to his prospective employer, surely it is not "reasonable" to report a criminal conviction *prior* to ensuring that it applies to the right person.

of public records because 1681e(b) requires CRAs to employ "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). It therefore makes sense to read section 1681k(a)(2) to address a different concern—namely, the obligation of the CRA to report current (as opposed to outdated) records. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 588, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010) ("[T]he existence of a separate provision that, by its plain terms, is more obviously tailored to the concern at issue ... weighs against stretching the language of the [statutory provision] to accommodate [an] expansive reading").

To the extent there is any ambiguity in the words of the statute, the legislative history further supports narrowly interpreting the phrase "complete and up to date" to address only the current public record status. An early version of the bill included language identical to section 1681k(a)'s final form and required that a CRA "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." S. 823, 91st Cong., 1st Sess. § 613 (Nov. 5, 1969); *see also* S. Rep. No. 91-517, 91st Cong., 1st Sess., at 4 (Nov. 5, 1969) (Report of the Committee on Banking and Currency accompanying the proposed bill). Specific to the handling of public record information, the report accompanying the proposed bill from the Senate's Committee on Banking and Currency identified the problem Congress was trying to address:

> Most credit bureaus systematically compile public record information such as records of suits, tax liens, arrests, indictments, convictions, ... judgments and the like. This information is then included on a person's report ... when he applies for employment. Unfortunately, the information cannot always be kept up to date either because it is costly or because the correct information is simply not available. Thus, it is possible for a credit bureau to report a record of a suit or arrest without indicating that the suit was dismissed or the arrest

charges dropped. Because public record information is reported to employers as well as creditors, a consumer's future employment career could be jeopardized because of an incomplete credit report.

S. Rep. No. 91-517, 91st Cong., 1st Sess., at 4 (Nov. 5, 1969). In the section-by-section analysis specific to this provision, the Committee reiterated that "[r]eporting agencies cannot report adverse items of public record information for employment purposes unless they maintain strict procedures to keep the information up to date." *Id.* at 7. When the FCRA was ultimately enacted, the final bill contained the language of Section 1681k(a)(2) in its current form. Pub. L. No. 91-508, § 613, 84 Stat. 1114, 1133 (Oct. 26, 1970). The legislative history surrounding the bill's final enactment again makes clear that Congress wanted to ensure that reporting agencies maintain strict procedures "to verify the current status of such public record items" when reporting adverse public record information. 116 Cong. Rec. H 10048, 10052 (daily ed. Oct. 13, 1970) (statement of Rep. Sullivan).

Finally, the Federal Trade Commission ("FTC"), the agency responsible for enforcing many of the FCRA provisions, offered staff guidance that further supports the view that "complete and up to date" means the current status of public record items. *See Farmer*, 285 F.R.D. at 696–97 (citing the same FTC guidance as persuasive authority in the interpretation of section 1681k(a)). The FTC explained that the provision:

> require[s] only that each [public record] *item* reported be complete and up to date. For example, if the CRA reports an indictment, it must also report any dismissal or acquittal available on the public record as of the date of the report. Similarly, if the CRA reports a conviction, it must report a reversal that has occurred on appeal.

FTC, Div. of Fin. Practices, Staff Opinion Letter, 1999 WL 33932137 (Dec. 16, 1999) (emphasis in original).

Because section 1681k(a)(2) only requires a CRA to report the current public record status of an item, Plaintiff's interpretation

that renders NYOCA records uniformly incomplete is incorrect.[5]

## II. Class Certification under Rule 23(b)(3)

### A. Legal Standard

■■■ " 'The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 79 (2d Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (other quotation marks omitted)). "A district court may only certify a class if it determines that each Rule 23 requirement is met," *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 464 (2d Cir. 2013), and "[t]he party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met," *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

■■■ A district court may certify a class only if the class meets all of the requirements of Rule 23(a) and the relevant requirements of Rule 23(b). "Regardless of whether class certification is contested, a court may not certify a putative class unless it has performed a 'rigorous analysis' and determined that each of Rule 23's requirements has been met." *Animal Sci. Prods. v. Hebei Welcome Pharm. Co. Ltd. (In re Vitamin C Antitrust Litig.)*, 279 F.R.D. 90, 98 (E.D.N.Y. 2012) (quoting *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). This "rigorous analysis" sets a higher standard than "a mere pleading standard," *Ohio Pub. Emps. Ret. Sys. v. Gen. Reinsurance Corp. (In re AIG Sec. Litig.)*, 689 F.3d 229, 237–38 (2d Cir. 2012) (quotation marks omitted).

■■■ A class action is appropriate:

only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to meeting the requirements of Rule 23(a), to certify a class pursuant to Rule 23(b)(3), a plaintiff must establish that "both (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.' " *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23(b)(3)). " 'While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.' " *Sykes*, 780 F.3d at 81 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Although Rule 23(b)(3) " 'does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof,' " *id.* (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, —— U.S. ——, 133 S.Ct. 1184, 1196, 185 L.Ed.2d 308 (2013) (alterations omitted, emphasis in original)), it "imposes a 'far more demanding' inquiry into the common issues which serve as the basis for class certification" than does Rule 23(a), *id.* (quoting *Amchem*, 521 U.S. at 623–24, 117 S.Ct. 2231).

■■■ Determining whether to certify a class under Rule 23 will frequently require some evaluation of the merits of the plaintiffs' underlying claim. *Comcast Corp. v. Behrend*, —— U.S. ——, 133 S.Ct. 1426, 1432, 185

---

**5.** This interpretation of "complete" is also applicable to the NY-FCRA. The NY-FCRA requires that CRAs "maintain reasonable procedures" to ensure that reported public record information is "complete and up to date" and states that to meet this requirement, a CRA must "accurately report the status of public record information as of the date recorded in its files provided such information is updated on a regular basis." N.Y. Gen. Bus. Law § 380-g(b). Similar to the FCRA, the focus is on the up to date status of the public record information.

L.Ed.2d 515 (2013). "But the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.' " *Amgen*, 133 S.Ct. at 1191. " 'Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.' " *Fezzani v. Bear, Stearns & Co.*, 777 F.3d 566, 570 (2d Cir. 2015) (quoting *Amgen*, 133 S.Ct. at 1194–95).

### B. Plaintiff Has Not Met His Burden of Proof To Show that Class Certification Is Appropriate

In this case, Plaintiff's motion to certify founders on at least two requirements: he has not demonstrated that questions of fact common to class members predominate over questions affecting only individual members as required by Rule 23(b)(3), and he has not demonstrated numerosity as required by Rule 23(a). Because those two failings are fatal, the Court need not and will not discuss the other requirements (others of which are also problematic for Plaintiff).

### 1. Common Questions of Law and Fact Do Not Predominate

 To determine whether Plaintiff has met his burden on predominance, a court "must assess (1) the 'elements of the claims and defenses to be litigated'; and (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson*, 780 F.3d at 138 (quoting 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:23 (11th ed. 2014)). The mere existence of individual inquiries does not doom a potential class; Rule 23(b)(3) "anticipates the existence of individual issues." *Sykes*, 780 F.3d at 87. What will doom a class, however, is the determination that common issues will be overwhelmed by individual issues. Again, while Rule 23(a)(2) requires commonality, the predominance requirement of Rule 23(b)(3) "imposes a 'far more demanding' inquiry." *Id.* at 81 (quoting *Amchem*, 521 U.S. at 623–24, 117 S.Ct. 2231).

In order to satisfy the predominance requirement, the proposed class must be " 'sufficiently cohesive to warrant adjudication by representation.' " *In re AIG Sec. Litig.*, 689 F.3d at 239–40 (quoting *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231). The predominance inquiry frequently hinges on whether elements of each class member's case can be proven through generalized proof, and whether the issues that can be so proven are more substantial than the issues subject only to individualized proof. *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010). A court must "give careful scrutiny" to the relationship between common questions, "where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof,' " and individual questions, "where 'members of a proposed class will need to present evidence that varies from member to member.' " *Tyson Foods, Inc. v. Bouaphakeo*, —— U.S. ——, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016) (quoting 2 William B. Rubenstein, *Newberg on Class Actions*, § 4:50 (5th ed. 2012)).

 In order to determine predominance, the Court must start with the elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S.Ct. 2179, 2184, 180 L.Ed.2d 24 (2011). Probably because Plaintiff proceeded from an incorrect view of what he will have to prove, he failed to address how, applying the correct burden of proof, common questions will predominate. Judge O'Kelley addressed just this issue in the *Farmer* case. There, as here, the CRA defendant admitted that it does not send notice to the subjects of the reports it prepares. Thus, there, as here, "Defendant's non-compliance with § 1681k(a)(1) is subject to generalized proof." *Farmer*, 285 F.R.D. at 702.

The problem in this case, as in *Farmer*, comes when Plaintiff attempts to prove that Sterling willfully failed to comply with § 1681k(a)(2). To show that:

each class member must demonstrate that defendant: (1) furnished a consumer report containing potentially adverse information about that consumer; (2) failed to maintain strict procedures when it reported the adverse information; and (3) furnished a consumer report containing adverse informa-

tion that was either incomplete or not up to date.

*Id.* at 700, 702; *see also Henderson*, 161 F.Supp.3d at 402; *Obabueki v. Int'l Bus. Mach.*, 145 F.Supp.2d 371, 396 (S.D.N.Y. 2001).

 Starting with the last element of the *prima facie* case: in light of this Court's interpretation of the word "complete," it will obviously be an intensively individualized inquiry to determine whether the information reported on any given class member was complete and up to date. The scope of that inquiry will necessarily be specific to each individual report.

The second element, whether Sterling maintains strict procedures designed to ensure that information it reports is current and up to date, is not subject to proof that is generally applicable to the class because Sterling has presented evidence, which was not contradicted by Plaintiff, that its procedures have changed over time. Schwal Decl. ¶¶ 12, 14, 16, 17. Because its procedures have changed over time, the proof as to the procedures used to generate any given report will vary. As with *Farmer*, "[a]lthough there will be some general factual overlap" regarding the procedures used by Defendant, there will also be significant differences over time. The difficulty with trying this case as a class action would be that each individual class member would have to prove that the procedures used to generate his or her report were not "strict procedures" and that Sterling was, at the time it generated that class member's report, acting willfully in not having strict procedures.[6]

Because highly individualized inquiries with regard to whether a particular report was complete and up to date and whether the procedures used to generate that report were "strict procedures" will predominate over the common issues, Plaintiff has not demonstrated that the predominance requirement is met.

### 2. Numerosity

 "To meet the requirements of Rule 23(a)(1), the class must be so large that joinder of all members would be impracticable." *McIntire v. China MediaExpress Holdings, Inc.*, 38 F.Supp.3d 415, 423 (S.D.N.Y. 2014) (quotation marks omitted). "Numerosity is presumed for classes larger than forty members." *Penn. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). This requirement, however, "is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Id.*

 In this case, Plaintiff has not proven that the class will be so numerous that joinder is not practicable. Largely because he started with an erroneous view of the elements of a *prima facie* case, he relied on the fact that almost 5,000 background reports were sold by Sterling for employment purposes that contained information obtained through NYOCA that related to a person with a then-current address in New York State between May 2, 2012 and January 20, 2015. Pl. Mem. at 17; Decl. of James Francis (Dkt. 40) Ex. 24 at 6 (Def.'s Suppl. Interrog. Resp. at No. 9). But that is the universe of persons on whom Sterling reported information; it is not the universe of persons as to whom Sterling reported information that was not complete and up to date. Plaintiff, who has the burden to show class certification is appropriate, has provided no information regarding the size of the smaller group of actual class members. Because Plaintiff has offered no evidence of the number of persons affected by records that were not complete and up to date, Plaintiff has failed to satisfy his burden to prove numerosity.

---

**6.** Because Sterling's procedures varied over time, it would be totally unmanageable to try this case on a class basis. While a jury is more than competent to hear testimony regarding the procedures that were in place when a particular report was prepared and to decide whether those procedures were "strict procedures" (or, for that matter, "reasonable procedures") as required by the statute, it would be unreasonable to expect a jury to hear testimony regarding all of the various twists and turns of the procedures that are applicable to some but not all members of the class and then determine as to each variation whether the procedures were "strict procedures" at that point.

Because Plaintiff has failed to demonstrate predominance or numerosity, his motion for class certification must be denied.[7]

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification is DENIED. The Clerk of the Court is respectfully directed to terminate Dkt. 33.

Counsel for all parties are directed to appear before the undersigned for a status conference on **April 22, 2016 at 10:00 a.m.** On or before **April 15, 2016**, the parties must submit a joint letter to the Court proposing a schedule for dispositive motions (if either side plans to file such motions) or trial (if neither side plans to file dispositive motions). Finally, because the Defendant did not renew its request to file certain materials contained in its Brief and Supporting Declaration in Opposition to Plaintiff's Motion for Class Certification under seal, *see* Memo Endorsement dated April 27, 2015 (Dkt. 46), the Defendant is directed to file appropriately un-redacted documents on the public record on or before April 8, 2016.

**SO ORDERED.**

---

7. Plaintiff's failure to prove numerosity is also fatal to his motion to certify a subclass of New York residents pursuant to Rule 23(b)(2).